D3D Technologies, Inc. v. Microsoft Corporation, Inc. May it please the Court, my name is Tarek Fahmy. I'm here representing D3D Technologies. Your Honors, with respect to this case, which involves the 771 patent, the first error of this case concerns Dependent Claims 6, 13, and 20. Each of those claims requires sorting voxels of selected items of a three-dimensional image by a property of that voxel, and then applying colors to groups of the sorted voxels to obtain a colored image. The fundamental error that the Board committed here was confusing the assignment of colors to a voxel as recited in the claim versus display of a pixel in the actual display unit. And you can see this error in the Board's analysis, particularly at pages 24 and 25 of their opinion. At that point, the problem is that rendering color as Murphy renders color for each voxel, which therefore includes those voxels in the second volumes, etc. But the rendering operation is a display operation, and involves pixels. And to understand this, let me see if I can give you a little background about what Murphy is talking about here. Well, can you, before you get to that, I guess when you're doing that, because the Board on the previous page on 24 does talk about its reading of what Murphy discloses. So while you're doing that, can you tell me why you think the Board was wrong in that second paragraph of that page? Sure. So there's two parts to the claim, Your Honor. The first is the sorting operation. And on page 24, the Board is talking about sorting through image segmentation, as described in Murphy. Now, I don't think there's a dispute that segmentation is a kind of sorting. Where the dispute arises is that that segmentation is not the basis for this rendering of color that the Board goes on to talk about with respect to the part of the claim that talks about applying colors to voxels. What the Board is talking about at the bottom of 24, carrying on to the top of 25, is Murphy's description of volume rendering. If you see at the bottom of page 24, Murphy describes volume rendering, etc. Now, volume rendering in Murphy is the way in which images get displayed on what the viewer is looking at. And the way it does this is by projecting imaginary rays through this three-dimensional volume. And what gets, as these rays get projected through the volume, they encounter different pixels. And what gets put up on the display is some kind of combination of the colors or transparencies of the different voxels. You can think of it almost as a superposition of these voxels. But by that time, the voxels already have a color that's been associated with them. Murphy says that color is assigned based on the anatomical feature. So the confusion, though, that the Board has is they read this rendering as the application of color. And that's just not correct. What Murphy's describing when he talks about this is what's on the display. And that's not the color assigned to the voxel. There's nothing in Murphy that talks about assigning color based on the sorting that the Board addressed. There was no claim construction dispute with regard to these claims, right? It's all substantial evidence review? Yes, Your Honor. Substantial evidence review. Why don't you turn to the first issue, if you might, on the subtraction that is a construction question. It is a construction question, Your Honor. So with respect to the subtracted issue, which will affect all the claims of the patent, the Board's error here was improperly equating filtering with subtraction. You can see this at page 15 of the opinion. And at page 15, right at the top again, the Board says that because the 771 patent discloses multiple filtering processes, we cannot limit the claim subtracted to deletion of the underlying data. Well, the Board didn't just make that up, right? I mean, it cited sections of the specification to get to that sort of relationship between filtering and subtraction, right? Yes, but they did so in error, Your Honor. The specification does not equate filtering with subtraction. The claims also, the claims did not discuss any actual elimination of the data from the image. Well, we would disagree, Your Honor, and we would invite your attention to column 10. This is appendix page 53. Column 10, beginning at line 19, specification reads, software reviews each element of tissue throughout the volume, selects tissues to be filtered, and eliminates the tissues from the volume of interest. So that's the elimination. What line is that again? Yes, Your Honor. It begins at column 10, beginning at line 9, through the end of that paragraph. Selects tissues to be filtered and eliminates the selected tissue from the volume of interest. So that elimination, Your Honor, is the subtraction that's recited in the claim. It's an elimination from the data set. Is it elimination of the image or elimination of the data? It's elimination from the data set, Your Honor. Is the underlying data eliminated or is it just the image that's eliminated? No, it's eliminated. So it's not there to put in the display of the filtered image. I get that. But what happens to the underlying data? Are you saying that that data is eliminated? Yes, Your Honor. According to the specification, it's eliminated from the data set. So it's never there to be rendered. Well, the claim language says, selecting items of said image to be subtracted from said image to produce a filtered image. So the claim language doesn't get you to your construction, right? It does, Your Honor, because the image that's referenced in that line of the claim is the three-dimensional image that is recited in the limitation immediately prior to the selecting items. And the three-dimensional image, as we explained before the board, is not a real image. What's actually displayed are two different images, an image for the left eye, an image for the right eye. And it's the viewer's mind that puts these together in the viewer's head to form the three-dimensional image. Okay, but the subtraction happens relative to the image, not the underlying 3D model, right? Well, because there's no physical image, we think the specification explained that the subtraction has to occur with respect to the 3D model. That's the only way in which you could produce separate left images and right images from this new model, the one with the eliminated... Okay, so aside from the specification language you gave us, what else is there anywhere in the patent to show that we're talking about this relative to the underlying 3D model? That's really it, Your Honor. The specification does not really provide any other description. Okay, but do you agree that the specification also suggests that subtraction is a type of filtering? Well, subtraction is certainly a component of filtering, yes. But filtering isn't limited to subtraction. The two are not the same thing. So another type of filtering, for example... Oh yeah, clearly there are various filtering processes, but none of those filtering processes describe eliminating data, right? Right. Okay. So filtering can't be coincident, it can't be co-equal with subtraction, because subtraction... Well, but is that the same as saying subtraction is a type of filtering? Are you saying subtraction is not a type of filtering? No, Your Honor. What I'm saying is that filtering can be a component... Excuse me, subtraction can be a component of filtering, but it is not the same as filtering. Filtering is a broader term than subtraction, and that's where the board made its error. They applied a definition thinking that filtering and subtraction are the same thing, and the board said because filtering involves more than elimination, we can't limit subtraction to elimination. And this was the problem with their decision. You're into your rebuttal. I'll reserve the rest of the time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Nitika Fiorella on behalf of the Apelli Microsoft. I'd like to start where we just left with the subtracted term. We believe that the board's construction was entirely proper here. It walked through the intrinsic evidence as well as the extrinsic evidence, and found that the ordinary meaning of subtracted should apply, and the narrowing gloss that D3D suggests of actual elimination of underlying data is not supported. We've actually gone through a number of the examples that I was going to, so I'll just touch on and emphasize a few more. First, the claim language itself says nothing about actual elimination of data from the model. So that's our starting point, and that's where the board started. Instead, the subtraction is being applied to an image. So we're talking... This entire claim, Your Honor, is about the display of perspective, and displaying an image, and the ability to manipulate that image to satisfy the user's goals. So this entire claim is about the display of the image. Can you eliminate an image without subtracting the underlying data that produces the image? Yes, Your Honor. If you view it the way that the specification does, which is simply removing or taking away displayed items from an image. So say you have an image of the brain that's sliced together from an MRI or a CT machine, and you just want to highlight some matter in the brain. You could, and this is what the patent describes, you could color that or make it so that it is right in front of the user's eyes, and then the other aspects could kind of fade away, either by cutting away or by making them transparent. And all of those would apply to subtracting those items from the displayed image, yet you're not doing anything with the underlying data. And in fact, there's nothing in the specification that teaches a skilled artist on how they would even do that, how you go back to a 3D model. But what about your friend's citation to column 10 in the language in column 10? Yes, Your Honor. A few things. The board did consider that part of the specification and found that all it's describing is eliminating tissues from the volume of interest. It does not say that the underlying data of that tissue needs to also be eliminated. And in fact, it goes on further in that very section, where on appendix 55, starting in column 10, it says in the very next sentence, viewing the volume of interest with the tissue. Appendix 53, no? Column 10? Column 10, yes, I apologize. Appendix 53, right after the portion that my colleague refers to, it says you want to try to view the volume of interest with the tissue selected having been removed. So again, we're talking about the view of the volume of interest. Going back to the image, and then it continues. The user could select additional tissues for removal or to be re-added and iterate this process multiple times. And the board had expert testimony on this very point, which was to actually take out and eliminate the underlying data from a model, if later you're going to want the user to be able to say, oh, actually I want to see that piece of the image again. Let me re-add. Was that expert testimony rebutted? No, it was not, Your Honor. Dr. Bajaj simply talked about this general concept, but there's no specific rebuttal to that point. Instead, it's just a turning argument from D3D's point to say, well, Dr. Zida didn't explain this enough. So the board was perfectly within its discretion to credit that testimony. And that would be a substantial evidence standard, as Your Honor's know. You want to turn to the colors, although just to be clear on the process point, if we were to agree with your analysis on subtraction, does that end the case, or do we still reach the other dependent claims here? We do still reach the other dependent claims. So the subtraction issue is dispositive for the independent claims. So there's also a subtraction claim in one of the other cases. Does this dispose of that? It does. The parties rely on the same parts of the specifications. There are two different patents. But the same language is in both specifications. The board's analysis is entirely consistent between the two. So should you agree with us in this appeal, then in the 1075 appeal, that same holding would apply. So you want to turn to the colors? Yes. So the only remaining issue then is whether substantial evidence supports the board's finding that Murphy discloses this limitation of sorting voxels based on a property of the voxel and applying colors to groups of sorted voxels to obtain a colored image. So what the board did is looked properly at Murphy, and Murphy does describe creating new segment volumes using a segmentation filter. And it says all voxels that are inside this desired segment, they're going to fall on one side of that threshold value. And everything you don't want inside that segment is going to fall on another side of the threshold value. And it sounds like we're not disagreeing on that first part as to whether that qualifies as sorting based on a property. So then we get to the second step of applying colors. And here the claim language just says applying colors to groups of sorted voxels to obtain a colored image. There's no description or distinction really being made as to, I believe I heard, you know, whether it's associated with versus displayed. It just says apply a color. And Murphy teaches exactly this. It says that you can use these segmentation filters to differentiate skin, bones, and other anatomical features, and that the user has the ability to control attributes associated with each anatomical feature, such as color. And that, Your Honors, is at A1154 to 1155 in Murphy, paragraph 32. And our expert cites that very testimony to show that... The board credited Dr. Zayab's Was that rebutted? No. And again, it was not rebutted that Murphy teaches this. The only thing that Dr. Bajaj rebutted is whether or not that constitutes a property of the voxels. Whether distinguishing between anatomical features is enough to satisfy the claims. But no one disputes that that is what Murphy teaches. And then the board credited our expert's testimony at appendix 25 to say that these teachings from Murphy do, in fact, show that the applying colors limitation itself is met. Now the board did go on, and I believe what my opponent on the other side described is the part in Murphy that says, okay, there's also this 3D data set, and each data set has... Each voxel in the data set has four vectors, the red, the blue, the green, and the opacity values. And this is simply applying a color without reference to how it was originally sorted based on a property. But the board was very clear here, and it said at 24 and 25, that that is showing that there is the ability to add or apply color to any voxel, and those would correspond to voxels within a segmentation filter. And then it cites Dr. Dida's testimony where Murphy describes, you do that based on these anatomical features which themselves are associated with voxels. I just have one more point on that. In the briefing, it seemed like a big difference between the parties was whether it's enough to differentiate between anatomical features and apply colors based on those features. And I just want to point out that this is exactly what the 771 patent describes. So if we look at A53, column 10, lines 20 to 24, this is where the 771 patent is expressly describing. It is 10, column 10, lines 20 to 24. And this is where the patent is describing sorting voxels of the items by a property of the voxel. And it says an example could be that the coracal bone be white, blood vessels red, and brain matter gray to align with normal anatomical colors. And it goes on to say processing block 554 states applying colors to groups of sorted voxels to obtain a colored image. This would nominally be done based on the properties of the various types of tissue and the type of imaging being performed. So as the board also recognized, this is a parallel teaching to what is in Murphy. You segment these different tissues based on their anatomical features, and then you add color. That's all the claims require. If there are no other questions, we respectfully request the court affirm the board's decision. Your Honor, let me address the most recent remarks of my learned friend when she cited from column 10 of the patent. The portion that she cited referring the coloring for bones, blood vessels, etc. does not relate to the application of color. In fact, that relates to the segmentation step or the sorting step. And you see that the flow chart then goes on. Processing block 554 talks about the application of colors. So it's just incorrect that that step refers to the application of color. The other problem with this argument, an agreement that filtering can be done without subtraction. So it seems like we're in agreement that filtering is not the same as subtraction. That they are, in fact, different. The board's decision blurs that distinction. The other part of the argument related to some testimony of the experts, we disagree that there wasn't expert testimony rebutting what Dr. Zaitis said. But more importantly, the board... Clearly the board didn't credit that expert testimony. The board actually, I don't think, appreciated the distinction because they spoke to in their decision not the basis that Microsoft says is the reason for the reference teaching claim. The board spoke to, as we went over initially, the fact that the display operation is what applies to color. And that's not correct. The application of the color is based on the sorting. Now if the board, if you find rather that the board did not apply the rationale that Dr. Zaitis had stated, then remand is appropriate here for the board to revisit its decision and rethink things. Because as it's written, they rely on something else in Murphy. And that is the display operation. One of the consequences of these different types of some of the images reproduced from his declaration, I think these appear in the appendix. For example, on pages 1819 and 1820. In the Murphy approach to the coloring, regardless of the, for example, Hounsfeld intensity of a liver image, the entire liver would be colored the same. Because the coloring is not based on a property of the voxel. Whereas with the D3D patent, even though it's the same liver, if there were different intensity levels from the CT scan, the liver would be colored differently. And so that produces a very different result. And that was the basis for Dr. Bourgeois concluding that the two are not the same. Can I ask you just one housekeeping question, which is on the statement of related cases, this case pending in MD Florida? Yes you are. Was this stay, that involves the 771? It does. Has that proceeding been stayed pending the appeal or is it ongoing? I think it's stayed, Your Honor. I'm not directly involved in the litigation, but I believe it's stayed. Thank you. We thank both sides.